# United States Court of Appeals for the Federal Circuit

2008-3342

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Justin S. Herring, Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for petitioner. With him on the brief were Theodore B. Olson and Jason D. Specht.

Scott D. Austin, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3342

JOHN E. KIRKENDALL,

Plaintiff,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Petition for review of the Merit Systems Protection Board
in consolidated cases AT0330020621-M-2 and AT3443020622-M-2

_____

DECIDED: July 27, 2009

_____

Before MAYER, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

John E. Kirkendall seeks review of the final decision of the Merit Systems Protection Board (board) denying his request for corrective action for alleged violations of the Veterans Employment Opportunities Act (VEOA) of 1988 and the Uniformed Services Employment and Reemployment Rights Act (USERRA) of 1994. Kirkendall v. Dep't of the Army, 109 M.S.P.R. 698 (unpublished table decision) (2008).[1] For the

---

[1] Mr. Kirkendall's case was initially decided by an administrative judge in a written opinion dated February 22, 2008. When the full board denied Mr. Kirkendall's petition for review on August 5, 2008, the initial decision became the final decision of the board. We therefore refer only to the board, not to the administrative judge.

reasons set forth below, we reverse the final decision of the board on the VEOA claim, vacate the final decision of the board on the USERRA claim, and remand for further proceedings consistent with this opinion.

I

In December of 1999, Mr. Kirkendall applied for the position of Supervisory Equipment Specialist (Aircraft), GS-1670-12, with the Department of the Army (agency) in Fort Bragg, North Carolina. The agency rejected his application because it deemed the application lacking in detail. Mr. Kirkendall was notified on January 5 and 24, 2000, that he thus was rated ineligible for the position.

Because Mr. Kirkendall is a disabled veteran, he is entitled, under VEOA, to certain procedural rights and to ten additional preference points on his competitive examination score over non-preference applicants. As a veteran, he also is protected by USERRA from discrimination on account of his military service in the job selection process. After being notified that he had not been selected for the position, Mr. Kirkendall filed several complaints with the agency alleging violations of his VEOA and USERRA rights. Meeting with no success at the agency, he appealed to the board. The board concluded that his claims under VEOA were time barred, and that although he stated a claim under USERRA, he was not entitled to a hearing on that claim. The board's final decision on the VEOA and USERRA issues is dated October 13, 2004.

Mr. Kirkendall petitioned this court for review of the adverse decisions, arguing that the time for pursuing VEOA claims should be subject to equitable tolling, and that he should have been afforded a hearing on his USERRA claim. We agreed with Mr. Kirkendall on both issues, and remanded the case to the board to determine

whether Mr. Kirkendall should be granted equitable tolling to pursue his VEOA claim and to afford him a hearing on his USERRA claim. Kirkendall v. Dep't of the Army, 479 F.3d 830 (Fed. Cir. 2007) (en banc), cert. denied, 128 S. Ct. 375 (2007).

On remand to the board, and following a hearing, the board rejected Mr. Kirkendall's VEOA and USERRA claims on their merits. As for the VEOA claim, the board held that Mr. Kirkendall had "identified no veterans' preference statute or regulation" which the agency had violated in processing his application, and had "adduced no evidence showing the agency erred in its determination to rate him ineligible." On the USERRA claim, the board held that Mr. Kirkendall failed to show that his military service played any part in the agency's decision rating him ineligible for the position in question. Mr. Kirkendall timely sought review in this court, and we have jurisdiction to hear his appeal under 28 U.S.C. § 1295(a)(9).

II

First, we note that the lapse of time between Mr. Kirkendall's first attempts to vindicate his VEOA and USERRA rights and the present, nearly a decade, is not his fault. The agency's attempts to deny Mr. Kirkendall his day in court account for the delay.

Mr. Kirkendall advances two arguments in this appeal. First, he argues, as he did before the board, that the agency violated three specific statutes concerning veterans' preference rights, and that violation of any of the three statutes entitles him to corrective action. [2] He further argues that the board erred in not imposing sanctions on

---

[2] Mr. Kirkendall alleges violation of 5 U.S.C. §§ 3309, 3311(2), and 3313. We need address only his § 3311(2) contention.

the agency for its knowing destruction of documents that were admittedly pertinent to the litigation of his claims before the board.

We review a final decision of the board to determine if it is "arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law, rule or regulation; or unsupported by substantial evidence." Robinson v. Dep't of Homeland Sec., 498 F.3d 1361, 1364 (Fed. Cir. 2007) (citing 5 U.S.C. § 7703(c)). The board abuses its discretion when it rests its decision on factual findings unsupported by substantial evidence. O'Keefe v. U.S. Postal Serv., 318 F.3d 1310, 1314 (Fed. Cir. 2002). Issues of statutory or regulatory interpretation are reviewed without deference. Augustine v. Dep't of Veterans Affairs, 503 F.3d 1362, 1365 (Fed. Cir. 2007). The board's rulings on discovery issues are reviewed for abuse of discretion. Curtin v. Office of Pers. Mgmt., 846 F.2d 1373, 1378 (Fed. Cir. 1988).

III

The agency's vacancy announcement for the Supervisory Equipment Specialist position stated that an applicant "must have at least one (1) year of specialized experience equivalent to at least GS-11 level in the Federal Service." The announcement defined "specialized experience" as:

> Knowledge of supply, contracting, budget and Defense Business Operation (DBOF) activities.
> Comprehensive technical knowledge of the characteristics, properties of rotary wing aircraft.
> Extensive knowledge of aviation maintenance management, supply techniques, and concepts of repair, overhaul, maintenance, or inspection of aircraft and equipment as it applies to Army, Depot and FAA standards.
> Knowledge of the interface between maintenance, supply and financial systems, to include billing and credit procedures from OMA and DBOF.

Although the position described in the announcement was a civilian position at Fort Bragg, the job description was substantially the same as the military position of Aviation Maintenance Branch Chief, the position held by Mr. Kirkendall at Fort Bragg prior to his discharge. Without challenge, Mr. Kirkendall testified that the military and civilian position are "the very same."

The announcement attached a Supplemental Qualification Statement (SQS), which the applicant was required to complete and file along with his application for the position. The announcement gave applicants several possible choices for the form of application they wished to submit. In addition to the SQS, applicants were required to submit "an Application for Federal Employment (SF-171), an Optional Application for Federal Employment (OF-612), a resume <u>or any other written format chosen provided it contains all the required information to apply for this position</u>" (emphasis added). The announcement also referred to Optional Form 510 as explaining the choices available for the format of an application. Optional Form 510 itself states that an applicant may use "any other written format you choose." Nothing in the announcement barred submission of multiple written documents as an application. The announcement warned that "[i]ncomplete applications will result in loss of consideration."

On December 20, 1999, Mr. Kirkendall submitted his application. The application consisted first of a completed SQS, in which he stated that he had the requisite one year of experience, and also in which he answered positively thirteen specific questions designed to test his statement that he had the necessary experience. Second, following the invitation to use any written format he wished, Mr. Kirkendall submitted a self-made two-page resume; an Army Officer Evaluation Report (OER) covering the one-year

period from December 6, 1988, to December 5, 1989; his Officer Record Brief (ORB) showing the precise times of service in each of his positions in military service from start to finish in each position from 1982 until February 1, 1990; proof of his discharge (Form DD-214); and proof of his disabled status.[3]   For convenience, we hereinafter refer to Mr. Kirkendall's OER, ORB, and DD-214 together as his "military documents."

Mr. Kirkendall's military documents show his service for more than a year in the military version of the civilian position for which he applied, and additionally disclose his considerable experience as a rotary wing (helicopter) test pilot, as well as his experience in budgeting for maintenance of aircraft.   Indeed, the agency's superior officer testified that the requisite experience could be found within the military documents.

The closing date for the competition for the position was December 22, 1999. After reviewing Mr. Kirkendall's application, the agency, on January 5, 2000, informed Mr. Kirkendall in writing that he was ineligible to compete because "[y]our application lacks details of your experience relating to this position."

In early January of 2000, Mr. Kirkendall made several unsuccessful attempts to explain to the agency why his military experience was relevant to the position and specifically why that experience, as related in his military documents, which were part of his application, armed him with the requisite experience specified in the job

---

[3]   The application package submitted as an exhibit before the board did not contain the ORB.  Mr. Kirkendall testified under oath that the ORB was part of his original application.  His testimony was not challenged, and the board made no adverse credibility finding regarding Mr. Kirkendall's testimony.  Although the board did not expressly list the ORB in its description of Mr. Kirkendall's application package, we must credit Mr. Kirkendall's testimony in the absence of any contrary evidence.

announcement. The agency again notified him of his ineligibility on January 24. He then took his complaints to the board, only to wait until January 31, 2008 to have his case heard by the board on its merits. As explained below, it was only then that Mr. Kirkendall learned the real reason why his application had been rejected.

IV

Mr. Kirkendall and the two agency officials responsible for judging his application testified before the board. Arlynda Tolliver, a Personnel Staffing Specialist, created the job announcement, rated the applications, and prepared the certificate of eligibles for the position in question. She made the decision that Mr. Kirkendall's application lacked sufficient detail to verify the requisite experience. Patrick Gentry, the director of the agency's regional personnel operations center, reviewed Mr. Kirkendall's application and concurred with Ms. Tolliver's decision to rate Mr. Kirkendall ineligible for the position.

Mr. Kirkendall testified that he understood the job announcement to allow him to use any written format he desired to stand as his application. He understood that there was no restriction on including several written documents, such as his military documents, as part of his application. He expressed surprise that his application had been rejected for incompleteness, because his military documents, coupled with his two-page resume and the completed SQS, showed that he was applying for exactly the same job he had held in his military service, and that he had been rated superior for the twelve-month period covered by his OER. Further, and without contradiction, he testified that a careful reading of his ORB showed the number of months he had served

in the same position, on a "from when to when" basis, to accumulate the required one year of experience.

Ms. Tolliver testified that she was aware of Mr. Kirkendall's military documents in his application package but that she refused to consider their contents. In her words, the OER was not a "qualification tool that we use to determine qualifications." Ms. Tolliver also testified that she refused to use Mr. Kirkendall's Form DD-214 and his ORB in evaluating Mr. Kirkendall's experience. According to Ms. Tolliver, the Optional Form 510 did not allow for additional documents to supply information not already in the "application." If all of the required information regarding the necessary one year of experience was not stated in the "application," Ms. Tolliver would reject the application as "incomplete." In essence, the only role for documents such as Mr. Kirkendall's military documents is to corroborate what is already stated in the application itself.

Mr. Gentry served as Ms. Tolliver's superior in this case. He testified that he reviewed her disqualification decision independently, to ensure that the decision was correct. On direct testimony elicited by the agency, Mr. Gentry testified that Kirkendall's qualifications were "embedded in his experience base," but that his actual "application" did not state with specificity the information contained in the appended documents. According to Mr. Gentry, information substantiating the necessary work experience "has to be on the application form, because we demand that the application form be the primary document for applications." With respect to Mr. Kirkendall's military documents, Mr. Gentry agreed with Ms. Tolliver that the agency's practice was to ignore such documents unless the information contained in those documents had been previously stated verbatim in the application itself. Under the agency's practice, all information

pertinent to an applicant's qualifications must be written in the application itself, and documents such as the OER and ORB serve only the function of proving that what the applicant has said in his application is true.

The hearing before the board revealed the reason why Mr. Kirkendall was rated ineligible: his application was deemed insufficient in detail because the agency refused to give him any credit for the experience described in his military documents. Given this indisputable fact, Mr. Kirkendall argued to the board that the agency's practice of ignoring the military documents violated 5 U.S.C. § 3311(2), which states that a preference eligible (such as Mr. Kirkendall) "is entitled to credit–-(2) for all experience material to the position for which examined."

Notwithstanding (a) the confession by the agency that it deemed the military documents "irrelevant" as sources of information to show his specialized experience for purposes of his application and (b) the clarity of § 3311(2), the board nonetheless, as noted above, held that Mr. Kirkendall had failed to point out a veterans' preference statute that had been violated by the agency in this case, and that he had "adduced no evidence" showing agency error in the rating process.

V

Mr. Kirkendall presents this court with the same undisputed facts and the same clear statute, both of which the board overlooked in deciding his VEOA claim. We can barely imagine a stronger case of violation of a veteran's preference rights. Section 3311(2) guarantees that any experience of a veteran that is material to the position for which the veteran is examined will be credited. 5 U.S.C. § 3311(2). At the very least, "credited" must mean "considered." On the facts of this case, the agency admitted that

Mr. Kirkendall's military documents contained information about Mr. Kirkendall's experience in relation to the specific experience required by the job announcement. That information was simply ignored. The agency deemed it "irrelevant" because it had not been printed in the two-page, self-made application that Mr. Kirkendall submitted in response to the announcement that invited him to use any written form he wished. Indeed, Mr. Gentry, when explaining the agency's practice of requiring all information to be a single document, testified somewhat sheepishly that "I'm sorry it sounds process-oriented." Failure to give credit to Mr. Kirkendall's military documents is undeniable evidence of error by the agency in processing his application. And that error is a confession of breach of the duty owed to the veteran under section 3311(2) to give him credit for "all experience material to the position."

On appeal, the agency mounts at best a weak counter to Mr. Kirkendall's assertion that his section 3311(2) rights were violated. First, the agency argues that its refusal to credit Mr. Kirkendall's military documents cannot violate the agency's duty to give credit to all relevant experience because the agency "established a reasonable process for determining that he possessed the specialized experience required to be eligible for the position." This argument is unavailing. According to the agency, even if the military records showed the required experience exactly in the tabulated form desired by the agency, those records on their own would be irrelevant because the agency's "reasonable process" refuses to incorporate by reference information into an applicant's "application." Second, the agency asserts that a violation of section 3311(2) can be overlooked in this case as harmless error because, in its view, the excluded military records fail to show the required one year of specialized experience. Putting

aside that this argument overlooks Mr. Gentry's testimony that the requisite experience is embedded in the military records, the argument also asks this court to make factual findings that were not made by the board. The board made no findings about Mr. Kirkendall's experience as revealed in his military documents. Indeed, at a point in the hearing when Mr. Kirkendall's counsel was pressing Ms. Tolliver about the contents of the military documents, the board commented that "[i]f she did not consider it, why do I really care about all this?"[4] The board simply affirmed the agency's decision that Mr. Kirkendall's application, exclusive of the military records, was incomplete.

We therefore reverse the final decision of the board. Mr. Kirkendall's VEOA rights were indeed violated, and he is entitled to corrective relief. We wish to be clear, however, on the nature of the VEOA violation in this case. We hold only that the agency violated Mr. Kirkendall's right to have his experience, as related in his military documents, credited as part of his application. We do not opine on whether, if Mr. Kirkendall's name should have been on the final competing list, he should have been awarded the job.

Mr. Kirkendall is entitled to an appropriate remedy for the violation of his VEOA rights. The board has much experience with crafting remedies for VEOA violations and, for that reason, we remand the case to the board for it, in the first instance, to craft appropriate relief for Mr. Kirkendall.

In Walker v. Department of the Army, 104 M.S.P.R. 96 (2006), the offending agency offered to correct its procedural VEOA violation by giving the veteran priority

---

[4] Mr. Kirkendall's counsel responded to this question by stating that "Ms. Tolliver was erroneous in her belief" that she could lawfully ignore the military documents.

consideration for the next appropriate vacancy of the same grade and occupation. Id. at 98. The board rejected the offer of priority consideration as inadequate under 5 U.S.C. § 3330c(a):

> [P]riority consideration for a future vacancy is a remedy that provides prospective relief for the denial of the opportunity to compete, but it does not correct the agency's error with respect to the actual position for which the agency denied the appellant consideration. In the context of a VEOA appeal, such relief would be inappropriate because VEOA requires the Board to do more than merely provide a remedy for a past wrong; it mandates that the Board "shall order the agency to comply with" the violated provisions . . . . Therefore, where an agency violates a statute related to veterans' preference by denying the appellant the right to compete for a particular position, the Board must craft a remedy that allows the appellant to compete for the position, [and] allows the Board to determine whether the appellant suffered any loss of wages or benefits by reason of the violation . . . . Reconstruction of the selection process requires the agency to comply with the provisions it violated . . . .

Id. at 105-06.

Section 3330c(a) specifies that the board "shall order the agency to comply" with the particular VEOA right that it violated. We agree that an offer of prospective relief, such as priority consideration for a future job opening, is insufficient to remedy the VEOA violation in this case.

VI

The other matter Mr. Kirkendall raised on appeal relates to the agency's knowing destruction of pertinent documents while the case was underway. This issue derives from Mr. Kirkendall's discovery request in September 2003, when he was first presenting his VEOA and USERRA claims to the board. He sought the applications from applicants whom the agency deemed were qualified to compete for the position, as well as all documents submitted in support of their applications. He argued that such documents were necessary to determine if he had valid VEOA and USERRA claims.

Without such evidence, Mr. Kirkendall could not establish that he had been discriminated against on account of his status as a veteran, nor could he be assured that his VEOA rights had not been violated.

The agency failed to meet the board's October 3, 2003 deadline order for production of requested documents. Mr. Kirkendall then moved to compel production, and the board granted his request. The agency responded to the order by confessing that it had destroyed the applications and rating sheets for eight of the twelve applicants who responded to the same external recruiting bulletin as had Mr. Kirkendall. Further, the agency stated that it had destroyed all the applications, and all but one of the rating sheets, for the seven applicants who responded to an internal recruiting bulletin for the position. The person who ultimately won the position, Kenneth Black, applied pursuant to the internal recruiting bulletin. The agency averred that his application had been destroyed and that only his rating sheet survived. Among the destroyed applications and rating sheets were those from the non-veterans who had been rated eligible to compete for the job.

Before the board, Mr. Kirkendall moved, in January of 2008, for sanctions for the document destruction. He asked for an adverse inference as a result of the destruction and a shift of the burden of proof to the agency to disprove his VEOA and USERRA claims. Faced with Mr. Kirkendall's motion and but a few days before the hearing, the agency finally produced the file of the winning candidate. Mr. Kirkendall emphasized the relevance of the missing files of the non-veteran candidates rated eligible to compete. Without those documents, Mr. Kirkendall was at a loss to determine whether, compared to the non-veteran competitors, his status as veteran had worked against

him.    With no explanation, the board denied Mr. Kirkendall's request for sanctions, stating that sanctions were "unwarranted under the circumstances."

On appeal, Mr. Kirkendall argues that the agency's abuse of his discovery request entitles him to a sanction in the form of granting an adverse inference against the agency or shifting the burden of proof on his claims.  He asks that we grant that relief, vacate the adverse holding on his USERRA claim, and remand that claim for further proceedings pursuant to the sanction.[5]

Mr. Kirkendall makes a compelling case that the litigation of his USERRA claim was hampered, indeed perhaps imperiled, when the agency destroyed the evidence that might have shown a violation of his USERRA rights.  He points out that there can be no legitimate excuse for destruction of the documents, as the agency's own document retention program requires retention of documents that are "under litigation," as the destroyed documents in this case were, to the knowledge of the agency.

The agency responds that Mr. Kirkendall cannot prevail on this issue absent a showing that the agency's destruction of the documents was in bad faith.  The agency relies on Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874, 878 (Fed. Cir. 1986), a patent case which came to us from a district court in the Seventh Circuit.  In deciding a sanction issue in that case, we relied on Seventh Circuit law, which makes bad faith a test for sanctions for document destruction discovery abuse.  Our practice in reviewing

---

[5]    We have already concluded that the agency violated Mr. Kirkendall's VEOA rights.  We thus treat his request for sanctions to relate to his USERRA claim.

patent cases is to apply regional circuit law to procedural issues. Thus, as Mr. Kirkendall correctly notes, the Eaton case is not relevant to the test this court sets as a requirement for sanctions for discovery abuse at the board.[6] But we need not fashion a test for this circuit for application to discovery abuses at the board. This is so because the board has already set its own test, and we are free to hold the board to its own rules.[7]

In 1981, the board established that negligence can justify an adverse inference sanction for destruction of evidence. Natividad v. Dep't of Agric., 5 M.S.P.R. 415, 418 (1981) ("[I]n the interest of fairness and justice, petitioner should not bear the burden of the agency's negligence in losing critical evidence . . . ."). In this case, where the relevance of the destroyed documents is beyond doubt, the board should have applied the rule in Natividad to Mr. Kirkendall's motion for sanctions for destruction of the documents. "[W]hen the Board takes a position inconsistent with its longstanding practice, without any explanation for the shift, the Board's action is not reasoned decision-making and is arbitrary." McCrary v. Office of Pers. Mgmt., 459 F.3d 1344, 1350 (Fed. Cir. 2006) (quotation marks omitted). Such arbitrary action amounts to an

---

[6] We recently were presented with the question of whether negligent, as opposed to bad faith, destruction of documents can give rise to an adverse inference. The matter was raised in Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007), but was not decided in the case. In that decision, we noted that there is a conflict in the circuits as to whether more than mere negligence is required to support an adverse inference. Id. at 1376 n.3.

[7] During the hearing, Mr. Kirkendall's counsel sought to explore the destruction of the non-veteran files. The agency's successful objection to Mr. Kirkendall's inquiry barred Mr. Kirkendall from exploring intent regarding the document destruction. Having stood in the way of Mr. Kirkendall's inquiry into faith, good or bad, in destruction of the documents, one might question the agency's good faith in mounting its inapt bad faith challenge here.

abuse of discretion. Under the circumstances of this case, the board should have drawn adverse inferences against the agency with respect to the documents destroyed. Failure to have done so is an abuse of discretion. Upon remand and further hearing on Mr. Kirkendall's USERRA claim, the agency must be burdened with adverse inferences concerning the destroyed documents. We leave it to the board in the first instance to determine to which of the destroyed documents an adverse inference must be drawn, and the scope and effect of each such inference.

## VII

For the foregoing reasons, we reverse the final decision of the board denying Mr. Kirkendall relief on his VEOA claim. We remand that issue for the board, in the first instance, to order appropriate relief for Mr. Kirkendall. We vacate the board's final decision denying Mr. Kirkendall relief on his USERRA claim, and remand that issue for further hearing and disposition, with the agency burdened with adverse inferences as specified above.

### REVERSED, VACATED, AND REMANDED